794 So.2d 660 (2001)
CITY OF ORMOND BEACH, Appellant,
v.
CITY OF DAYTONA BEACH, Appellee.
No. 5D00-2179.
District Court of Appeal of Florida, Fifth District.
July 20, 2001.
Rehearing Denied September 19, 2001.
*661 Francis J. Carroll, Jr. of Boehm, Brown, Seacrest, Fischer & LeFever, P.A., Daytona Beach, for Appellant.
Robert G. Brown, City Attorney and Marie Hartman, Deputy City Attorney, Office of the City Attorney, Daytona Beach, for Appellee.
SHARP, W., J.
This is an appeal by the City of Ormond Beach (Ormond Beach) of an order which dissolved a temporary injunction against the City of Daytona Beach (Daytona Beach). Ormond Beach argues inter alia, that the trial court failed to apply the correct legal standard in dissolving the injunction. We disagree and affirm.
In September of 1981, the two cities, which are geographically adjacent to one another, executed an agreement entitled "Water and Sewer Services Agreement" (the "Agreement"), pursuant to Chapter 166 and Article VIII, the Florida Constitution (1968).[1] The intent of the Agreement was to enable the cities to jointly plan sound and economically feasible growth of their water and sewer systems. It established a boundary or service line ("service line") which designated two service areas for the future expansion of water and sewer service. Ormond Beach was to service the portion north of the service line, while Daytona Beach was to service the southern portion. The cities agreed not to offer service or extend potable water and sanitary service within each other's service area. The Agreement contained no provision with regard to annexation by either city.
Approximately ten years later, in 1991, the cities entered into a new agreement (the "1991 Agreement"), which was substantially the same as the Agreement. The 1991 Agreement contained a provision in which both cities agreed to decline any future requests for annexation, also contrary to the service line.
In October of 1992, Ormond Beach sought to annex property off Clyde Morris Boulevard which was south of the service line. The parties entered into an amendment to the 1991 Agreement, entitled "Amendment to First Amended Water and Sewer Service Area Agreement" (the "1992 Amendment"), which gave Ormond Beach the right to annex this property. In exchange, the 1992 Amendment provided that Daytona Beach could,
[t]hereafter, with prior written notice to the City of Ormond Beach, elect to annex and provide potable water and sanitary sewer service to, an area which is equivalent in size and assessed value, *662 and which will have an equivalent demand for potable water and sanitary sewer service, to that permitted hereby to be annexed into the City of Ormond Beach....
Except for the above, the cities continued to agree to decline any future requests for annexation contrary to the service line. Ormond Beach annexed the property, which was developed as a planned mobile home residential community known as "Aberdeen."
In 1999, Daytona Beach decided to exercise its right to annex two tracts of unincorporated land, totaling 167 acres, of which 95 acres were located on the Ormond Beach side of the service line. Daytona Beach also determined that this area was equivalent to the Aberdeen area, and provided Ormond Beach with written notice pursuant to the 1992 Amendment. An ordinance annexing the area was passed by the Daytona Beach City Commission, and a second reading and final adoption was scheduled for April 7, 1999.
However, on the afternoon of April 7th, Ormond Beach's attorney sought an ex parte temporary injunction, to enjoin Daytona Beach from adopting the annexation at its meeting that evening. Presented with this motion, the court contacted the City Attorney for Daytona Beach, advising him of the motion and requesting his immediate presence at the court. Thereafter, a hearing was held, at which time the parties presented oral argument. At the conclusion of the hearing, the court granted the motion and issued a temporary injunction, which was to expire on April 30, 1999. The injunction was later continued. When settlement proved impossible, Ormond Beach filed a damage claim and Daytona Beach moved to dismiss the injunction. In July of 2000, the court granted Daytona's motion and issued the order being appealed in this case.
The rules and burden of proof in dissolving an injunction differ depending on whether the injunction has been issued with or without notice (ex parte) to the other party.[2] The basis for the injunction may not be challenged where notice and opportunity to be heard have been given, for to do so would constitute an attempt to retry the issues. Spaulding v. Estate of Frey, 666 So.2d 935 (Fla. 5th DCA 1995). Instead, an injunction with notice should only be dissolved where the facts have changed to the point that equity dictates the injunction is no longer needed. Pecora v. Pecora, 697 So.2d 1267 (Fla. 5th DCA 1997); Brock v. Brock, 667 So.2d 310, 312 (Fla. 1st DCA 1995); Spaulding; McCahill v. Braishfield Associates, Inc., 661 So.2d 399 (Fla. 5th DCA 1995). The defendant has the burden of proof in seeking to dissolve the injunction in this situation. Spaulding; McCahill.
However, if an injunction has been issued without notice, the plaintiff must demonstrate entitlement to the injunction when a motion to dissolve it has been made. See Fee v. Usler, 761 So.2d 361, 364 (Fla. 5th DCA 2000); Shea v. Central Diagnostic Services, Inc., 552 So.2d 344, 346 (Fla. 5th DCA 1989). One who has obtained ex parte relief cannot shift the burden to the defendant until it has first established an evidentiary basis to support the injunction. Fee; Shea. In this situation, the burden of proof is on the plaintiff to show the complaint and affidavits were sufficient to support the injunction. Hunter v. Dennies Contracting Co., Inc., 693 So.2d 615 (Fla. 2d DCA 1997); Fee; Shea.
*663 The facts of this case fall somewhere between notice and no notice. Daytona Beach was made aware of the motion by the court, and did have an off-the-cuff opportunity to argue against imposition of the injunction. But notice encompasses a reasonable opportunity to prepare and offer evidence. Pecora. A telephone call from the court requesting a party's immediate presence to defend a motion for an injunction does not constitute reasonable notice. Daytona Beach had no opportunity to prepare for the hearing. Counsel did not have a copy of the motion, and thus was not aware of its basis until he attended the hearing. As a result, he was unable to review the allegations prior to the hearing, perform even the most rudimentary research on the legal issues, or present evidence. See Pecora, State DOT v. Plunske, 267 So.2d 337 (Fla. 4th DCA 1972); Florida High School Activities Ass'n v. Benitez, 748 So.2d 358 (Fla. 5th DCA 1999); Dept. of Community Affairs v. Holmes County, 668 So.2d 1096 (Fla. 1st DCA 1996).
We do not believe that this procedure afforded Daytona Beach reasonable notice and a meaningful opportunity to be heard. It was tantamount to granting the injunction without any notice at all. Therefore, the burden of proof was on Ormond Beach, as the plaintiff, to show its entitlement to the injunction when the motion to dissolve was heard. Fee, Shea. Thus the trial court was correct in applying this standard.
In its order, which we adopt, the court analyzed the case as follows:
A temporary injunction is an extraordinary and drastic remedy; its purpose is to preserve the status quo pending final hearing. See Florida Land Company v. Orange County, 418 So.2d 370 (Fla. 5th DCA 1982). In order to prevail in an action for temporary injunction, the party seeking the injunction must demonstrate: 1) a likelihood of irreparable harm; 2) the unavailability of an adequate remedy at law; 3) a substantial likelihood of success on the merits; and 4) consideration of the public interest. See Florida Land Company id. at 372; City of Oviedo v. Alafaya Utilities, Inc., 704 So.2d 206 (Fla. 5th DCA 1998). An injunction which is without basis in the pleadings or evidence, or which is illegal in nature, should be dissolved.
A court has no authority to enter an injunction prohibiting a legislative act by another branch of government, absent illegality or fraud. See City of Miami Beach v. Kaiser, 213 So.2d 449 (Fla. 3d DCA 1968). This is so because of the separation of powers doctrine; a court is not permitted to substitute its judgment for that of co-equal branch of government. Annexation is a legislative act, provided for in our Florida Constitution and in Chapter 171, Florida Statutes; thus, absent illegality or fraud, this court has no authority to enjoin municipal annexation.
Ormond Beach contended at the initial hearing, and continues to assert, that the agreement between Ormond Beach and Daytona Beach was entered into pursuant to Chapter 163. Florida Statutes, and that Part II of Chapter 163 authorizes cities to enter into binding, legally enforceable agreements not to annex. Therefore, argues Ormond Beach, a violation of the agreement by Daytona Beach would be illegal, and should be enjoined. The agreement, however, provides on its face that it is entered into pursuant to Chapter 166, Florida Statutes, the municipal home rule statute, and the respective charter of each city. Moreover, the portions of Part II of Chapter 163 relied upon by Ormond Beach were not enacted until several years after the last amendment *664 to the agreement between those two cities.
Absent statutory modification, annexation is a governmental legislative power which cannot be contracted away. See City of Safety Harbor v. City of Clearwater, 330 So.2d 840 (Fla. 2d DCA 1976). At the time of the agreement between Ormond Beach and Daytona Beach, there was no statutory modification permitting a municipality to contract with another city, via resolution, to (permanently?) refrain from annexing.
Under all of these circumstances, this court has concluded that Ormond Beach cannot show a substantial likelihood of success on the merits, because the agreement to refrain from annexation is unenforceable. Thus, the temporary injunction previously entered herein must be dissolved. (footnotes omitted)
Ormond Beach suggests that the Legislature enacted § 163.3161, the Local Government Comprehensive Planning Act, to promote a comprehensive program for development in Florida, and that this legislation inferentially overruled City of Safety Harbor v. City of Clearwater, 330 So.2d 840 (Fla. 2d DCA 1976), where the court held the power to annex may not be contracted away. But the Legislature is presumed to know, and to have adopted, existing judicial constructions at the time it enacts legislation, unless a contrary intent is expressed in the statute. See Joshua v. City of Gainesville, 768 So.2d 432 (Fla. 2000); Schwartz v. Geico Gen. Ins. Co., 712 So.2d 773, 774 (Fla. 4th DCA 1998); Brannon v. Tampa Tribune, 711 So.2d 97 (Fla. 1st DCA 1998). A court has no authority, absent illegality or fraud, to enjoin a legislative act such as the power to annex. City of Miami Beach v. Kaiser, 213 So.2d 449 (Fla. 3d DCA 1968).
We therefore must conclude that Safety Harbor has not been overruled by section 163.3161, and that any such pronouncement must come from the Legislature. That being the case, the trial court properly dissolved the injunction.
AFFIRMED.
PLEUS and PALMER, JJ., concur.
NOTES
[1] The Legislature enacted chapter 171 in 1974 to provide for a uniform annexation procedure throughout the state. It set forth a uniform method and criteria for annexation. After Chapter 171 was adopted, these procedures became the exclusive method to be used for municipal annexation. SCA Services of Florida v. City of Tallahassee, 418 So.2d 1148 (Fla. 1st DCA 1982).
[2] See Fla. R. Civ. Proc. 1.610.