IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-413

Filed 18 June 2025

North Carolina Industrial Commission, No. 20-743444

CHRISTOPHER G. CABLE, Employee, Plaintiff,

v.

CONSOLIDATED METCO, INC., Employer,
ACE, USA, Carrier, (ESIS, INC., Third
Party Administrator), Defendants.

Appeal by Plaintiff from opinion and award entered 5 February 2024 by the

North Carolina Industrial Commission. Heard in the Court of Appeals 9 October

2024.

> *The Harper Law Firm, PLLC, by Joshua O. Harper and Richard B. Harper, for*
> *Plaintiff-Appellant.*
>
> *Roberts & Stevens, P.A., by Charles E. McGee, for Defendants-Appellees.*

CARPENTER, Judge.

Christopher G. Cable ("Plaintiff") appeals from an "Opinion and Award"

entered 5 February 2024 by the North Carolina Industrial Commission (the "Full

Commission"). On appeal, Plaintiff argues the Full Commission erred by not

awarding him wage-loss compensation from 3 April 2020 to 20 April 2022. After

careful review, we affirm.

## I. Factual & Procedural Background

On 21 January 2020, Plaintiff injured his low back while working as a molding

production supervisor for Consolidated Metco, Inc. ("Defendant-Employer") at their facility in Bryson City, North Carolina. Plaintiff was lifting a wooden pallet when he "felt and heard a pop in [his] back as [he] was twisting and lifting." The following day, Plaintiff reported his injury to his supervisor, Chris Burch, and took a vacation day due to his back pain. At the time, Defendant-Employer was in the process of "shutting down their Bryson City facility in favor of the Canton plant and other facilities."

On 23 January 2020, Plaintiff saw Nicole Foxworth, a physician assistant at Everside Health, for an annual appointment and complained about back pain stemming from the 21 January 2020 work injury. Foxworth diagnosed Plaintiff with a lumbar strain and recommended Plaintiff continue taking ibuprofen, advised Plaintiff that he could continue his regular work duties, and ordered an x-ray which Plaintiff completed the same day at Smoky Mountain Urgent Care. The radiologist who interpreted the x-ray film included in the "impression" section of her report that Plaintiff had "mild degenerative disc disease."

On 24 January 2020, Plaintiff texted Burch asking if he could take another vacation day. Burch responded, "Sure. That's fine. I'll see you on Monday." According to Burch, when Plaintiff returned to work he did "a little bit of everything," including running presses, setting tools, and working as a material handler and process tech— a job that involved lifting, bending, twisting, and stooping. According to Plaintiff, however, when he returned to work he only performed computer tasks and did not

engage in any heavy lifting due to his back pain.

On 28 January 2020, on behalf of Defendant-Employer, Ace USA, and ESIS, Inc. (collectively, "Defendants"), Burch completed a Form 19 Employer's Report of Employee's Injury or Occupational Disease for the Industrial Commission, which indicated that Plaintiff's specific injury was "sprain trunk – spinal cord." On 11 February 2020, Plaintiff visited his family physician, Dr. David Johnston, for a neurology referral because Plaintiff "want[ed] to go to flight school and need[ed] [an] ok to go." Plaintiff did not mention his work injury or back pain to Dr. Johnston during the visit.

In March 2020, when Burch asked Plaintiff to "pull the tools out of the press [to] send back over to Canton," Plaintiff informed Burch that his back was bothering him again. According to Burch, Plaintiff did not take the news that tools were being moved to Canton very well.

On 3 April 2020, Plaintiff was laid off by Defendant-Employer. Plaintiff's layoff was unrelated to his 21 January 2020 work injury. On 20 April 2020, Plaintiff signed a document entitled "Separation and General Release of all Claims," in which he agreed to no longer render services to Defendant-Employer and acknowledged that he may be denied further employment with Defendant-Employer should he later re-apply. When Plaintiff returned to collect his personal belongings after being laid off, he told Burch he was still experiencing back pain.

On 15 April 2020, Plaintiff texted Everett Lynch, Defendant-Employer's

Human Resources Director, saying he would "be willing to go back to hourly to keep [his] job" at either the Bryson City or Canton facility. Lynch responded: "Okay. I will keep you posted. It's just unclear right now."

That same day, Plaintiff saw Dr. David R. Castor at Smoky Mountain Urgent Care. Plaintiff complained of low back pain and was diagnosed with "Lumbago with sciatica, right side" and "chronic pain." Defendant-Employer requested an MRI, which Plaintiff underwent on 26 June 2020. On 20 July 2020, Plaintiff reviewed the results of the MRI with Dr. Castor, who reported that Plaintiff had "Lumbar degenerative disc disease" and "Foraminal stenosis of lumbar region." At that time, Plaintiff was advised to "avoid heavy lifting or repetitive motion of the affected area."

On 22 July 2020, Plaintiff completed an application for the Trade Adjustment Assistance program ("TAA") to obtain tuition assistance so he could enroll in the two-year Business Administration program at Southwestern Community College. In the application, Plaintiff checked "yes" when asked if he could return to his former occupation and former industry. In the section "Barriers to employment (if any)," Plaintiff simply noted that he was seeking a degree to obtain employment to support his family.

Plaintiff's application was endorsed by Sheila Traub, a local TAA representative. Traub determined Plaintiff was eligible for the program because: (1) "[s]uitable employment [was] not available;" (2) he would "benefit from appropriate training;" (3) "a reasonable expectation for employment following training exists;" (4)

"training is reasonably available;" (5) he was "qualified to undertake and complete his training;" and (6) the "training [was] suitable and available at a reasonable cost." Plaintiff was admitted to Southwestern Community College on 24 July 2020 and began classes on 17 August 2020.

On 19 August 2020, Smoky Mountain Sports Medicine & Physical Therapy recommended that Plaintiff participate in six weeks of physical therapy, one to two times per week. Plaintiff attended one physical therapy appointment, but did not return because he was "in so much pain" after the appointment that he "didn't go back."

On 25 September 2020, Plaintiff filed a Form 18 Notice of Accident to Employer and Claim of Employee, Representative, or Dependent. On 27 October 2020, Defendants filed a Form 63 Notice to Employee of Payment of Compensation [or Payment of Medical Benefits Only] Without Prejudice. On 5 May 2021, Plaintiff filed a Form 33 Request That Claim be Assigned for Hearing, and Defendants filed a Form 33R Response to Request That Claim be Assigned for Hearing on 21 June 2021. On 3 August 2021, Plaintiff filed a corrected Form 33 and Form 18.

On 14 September 2021, Plaintiff applied to work for Defendant-Employer as a Process Engineer. According to Plaintiff's job-search log, he applied for twenty-four jobs between 14 September 2021 and 18 October 2021.

On 21 March 2022, Plaintiff's workers' compensation claim came before Deputy Commissioner Jesse M. Tillman, III. On 19 December 2022, Deputy Commissioner

Tillman entered an opinion and award concluding Plaintiff was "entitled to have Defendants provide medical compensation" and "vocational rehabilitation" because Plaintiff "sustained a compensable injury by accident (specific trauma incident) to his low back on January 21, 2020." Deputy Commissioner Tillman found that Plaintiff was "totally, and after an eventually successful reasonable effort to return to work, partially disabled." Deputy Commissioner Tillman further found that "Plaintiff's total disability . . . began on April 3, 2020 and continued until the Plaintiff successfully returned to work on June 6, 2022."

Defendants appealed to the Full Commission, and the matter was heard on 11 May 2023. On 5 February 2024, the Full Commission issued its Opinion and Award, concluding, in relevant part, that Plaintiff was not entitled to any wage-loss compensation from 3 April 2020 to 20 April 2022. On 20 February 2024, Plaintiff filed written notice of appeal.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 97-86 (2023).

## III. Issues

The issues are whether the Full Commission erred by: (1) determining that Plaintiff was not disabled from 3 April 2020 to 20 April 2022; and (2) relying on an unpublished opinion and "deficient" findings of fact to support conclusion of law 7.

## IV. Standard of Review

Our review of an opinion and award of the Full Commission is "limited to

reviewing whether *any* competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000) (emphasis added). "Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." *Church v. Bemis Mfg. Co.*, 228 N.C. App. 23, 26, 743 S.E.2d 680, 682 (2013). The Full Commission "is the sole judge of the weight and credibility of the evidence[,]" *Deese*, 228 N.C. App. at 116, 530 S.E.2d at 553, and its findings of fact "are conclusive on appeal if supported by competent evidence even though there is evidence to support a contrary finding," *Murray v. Associated Insurers, Inc.*, 341 N.C. 712, 714, 462 S.E.2d 490, 491 (1995).

In making its determinations, the Full Commission cannot "wholly disregard or ignore the competent evidence before it." *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 601, 532 S.E.2d 207, 212 (2000). It is "not required, however, to find facts as to all credible evidence," as such a mandate "would place an unreasonable burden on the Commission." *London v. Snak Time Catering, Inc.*, 136 N.C. App. 473, 476, 525 S.E.2d 203, 205 (2000). Instead, the Full Commission must make findings regarding "those crucial and specific facts upon which the right to compensation depends so that a reviewing court can determine on appeal whether an adequate basis exists for the Commission's award." *Johnson v. Southern Tire Sales & Service*, 358 N.C. 701, 705, 599 S.E.2d 508, 511 (2004).

## V. Analysis

Plaintiff's primary argument is that the Full Commission erred by failing to award him wage-loss compensation from 2 April 2020 to 20 April 2022. Specifically, Plaintiff challenges the Full Commission's disability determination and its conclusion of law 7. Although Plaintiff advances four theories in support of his contention that the Full Commission erred by determining he was not disabled from 2 April 2020 to 20 April 2022, all of Plaintiff's challenges pertain to one overarching issue: whether the Full Commission erred by determining Plaintiff's job search during this time period was unreasonable. Accordingly, we address Plaintiff's contentions below.

**A. Disability Determination**

First, Plaintiff argues the Full Commission erred by determining his job search was unreasonable. Specifically, Plaintiff asserts that when making this determination, the Full Commission failed to consider his pain, disregarded the jobs he applied to while he was not under any formal work restrictions, and failed to shift the burden to Defendants to show that suitable jobs were available to Plaintiff. We disagree.

To receive compensation under the Workers Compensation Act, " 'the claimant has the burden of proving the existence of his disability and its extent.' " *Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 7, 562 S.E.2d 434, 439 (2002) (quoting *Saums v. Raleigh Cnty. Hosp.*, 346 N.C. 760, 763, 487 S.E.2d 746, 749 (1997) (citation omitted)). "[O]nce the claimant meets this initial burden, the defendant who claims that the plaintiff *is* capable of earning wages must come forward with evidence to

show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations." *Kennedy v. Duke Univ. Med. Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990) (emphasis in original).

"The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2023). "Although the pain caused by an injury is not compensable . . . , the degree of pain experienced must be considered by the Commission in determining the extent of the employee's incapacity to work and earn wages." *Matthews v. Petroleum Tank Service, Inc.*, 108 N.C. App. 259, 264, 423 S.E.2d 532, 535 (1992).

"A determination of disability is a conclusion of law that must be supported by specific findings which show: (1) plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment; (2) plaintiff was incapable after his injury of earning the same wages he had earned before his injury at any other employment; and (3) the incapacity to earn was caused by plaintiff's injury." *Griffin v. Absolute Fire Control, Inc.*, 269 N.C. App. 193, 199, 837 S.E.2d 420, 425 (2020). A claimant can offer proof to support the first two findings in several ways, including by producing:

> (1) medical evidence that the employee is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; or

(2) evidence that the employee is capable of some work, but after reasonable effort on the part of the employee has been unsuccessful in efforts to obtain employment; or

(3) evidence that the employee is capable of some work but that it would be futile because of preexisting conditions, i.e. age, inexperience, lack of education, to seek other employment; or

(4) evidence that the employee has obtained other employment at a wage less than that earned prior to the injury.

*Id.* at 199–200, 837 S.E.2d at 425.

Although the Commission is required to "explain its basis" for its determination that a claimant's job search was unreasonable, *see Patillo v. Goodyear Tire & Rubber Co.*, 251 N.C. App. 228, 240, 749 S.E.2d 906, 914 (2016), "no general rule exists for determining the reasonableness of an injured employee's job search," *Gonzalez v. Tidy Maids, Inc.*, 239 N.C. App. 469, 480, 768 S.E.2d 886, 894 (2015). Instead, the Commission is "free to decide whether an employee made a reasonable effort to obtain employment[,]" provided, of course, that such determination is supported by competent evidence. *Id.* at 480, 768 S.E.2d at 894 (*purgandum*); *see also Patillo*, 251 N.C. App. at 240, 794 S.E.2d at 914 (explaining conclusory findings that the "[p]laintiff's search for employment was unreasonable" are insufficient).

Here, the Full Commission concluded Plaintiff was not disabled from 2 April 2020 until 20 April 2022 because Plaintiff's job search during this time period was unreasonable. Specifically, the Full Commission found, based on the preponderance

of evidence on the record, that:

> 41. Plaintiff's job search log documents that he applied for twenty-four jobs between 14 September 2021 and 18 October 2021. The Full Commission finds . . . that Plaintiff's failure to apply for any job until September of 2021, having been laid off in April 2020 and not assigned any written work restrictions, was not reasonable. The Full Commission further finds that Plaintiff's post-layoff text communications with Defendant-Employer during 2020, while an effort to obtain reemployment, is not sufficient to constitute a reasonable job search.
> . . .
>
> 85. . . . Plaintiff's 3 April layoff from Defendant-Employer was unrelated to his 21 January 2020 injury.
>
> 86. . . . [S]tarting at the beginning of Southwestern Community College's fall semester of 2020, Plaintiff voluntarily removed himself from the labor market to pursue an associate degree in business.
>
> 87. . . . [P]rior to voluntarily removing himself from the labor market to pursue an associate degree . . . Plaintiff had not conducted a reasonable job search.
>
> 88. . . . [G]iven Plaintiff's lack of formal work restrictions and work history, that it would not have been futile for Plaintiff to seek employment subsequent to being laid off by Defendant-Employer prior to enrolling at Southwestern Community College. The Full Commission finds that, to the extent the 20 July 2020 Smoky Mountain Urgent Care medical note imposed physical restrictions, those restrictions were not sufficient to render a job search futile or render Plaintiff's subsequent search reasonable.
>
> 89. . . . Plaintiff was assigned no formal work restrictions consequent of the 21 January 2020 specific traumatic incident until March 2022, approximately two months prior to his graduation from Southwestern Community College.

The Full Commission's findings were supported by competent evidence and supported its determination that Plaintiff's job search was unreasonable. According to Plaintiff's job-search log, Plaintiff did not apply to any jobs prior to enrolling in community college in August 2020 and submitted his first job application to his former employer, Defendant-Employer, on 14 September 2021. Although Plaintiff applied to twenty-four jobs between 14 September 2021 and 18 October 2021, Plaintiff did not apply for any jobs from 18 October 2021 until 20 April 2022, at which time Plaintiff was nearing the end of his community college program. Moreover, Plaintiff testified that he "could do" a process engineer job following his 21 January 2020 work injury and was not prevented from working "all jobs."

Therefore, the Full Commission was free to find that Plaintiff's job search was unreasonable based on Plaintiff's job-search history, his decision to enroll in community college full-time rather than remain in the workforce, and his testimony indicating he was able to work during this time frame. Because competent evidence supports the Full Commission's determination that Plaintiff did not conduct a reasonable job search, and the findings sufficiently explain how Plaintiff failed to conduct a reasonable job search, we conclude the Full Commission did not err by concluding Plaintiff was not disabled from 2 April 2020 to 20 April 2022. *See Patillo*, 251 N.C. App. at 240, 794 S.E.2d at 914. Accordingly, the Full Commission did not err by concluding Plaintiff was not entitled to wage-loss compensation for this time

period.

Our conclusion regarding the Full Commission's disability determination forecloses Plaintiff's remaining arguments pertinent to this issue. Plaintiff cannot demonstrate the Full Commission failed to consider or weigh the evidence regarding his pain when determining Plaintiff's disability. Indeed, although it was not required to make specific findings regarding Plaintiff's pain, the Full Commission made several findings of fact considering Plaintiff's pain. For example, the Full Commission found that Dr. Albright determined Plaintiff's back pain was causally-related to his work injury and that the work restrictions Dr. Albright imposed "reflect[ed] his opinions regarding Plaintiff's physical restrictions as of 9 March 2022, consequent of [Plaintiff's] back pain." In other words, the Full Commission did not disregard Plaintiff's pain when determining that his job search was unreasonable and did not err by failing to make more specific findings regarding Plaintiff's pain. *See Garrett v. Goodyear Tire & Rubber Co.*, 260 N.C. App. 155, 174, 817 S.E.2d 842, 856 (2018); *Matthews*, 108 N.C. App. at 265, 423 S.E.2d at 535. Finally, because Plaintiff did not make an initial showing of disability for the relevant time period, the Full Commission did not err by failing to shift the burden to Defendants to show suitable jobs were available to Plaintiff. *See Kennedy*, 101 N.C. at 33, 398 S.E.2d at 682. Accordingly, the Full Commission did not err in its disability determination.

**B. Conclusion of Law 7**

Next, Plaintiff challenges conclusion of law 7. Specifically, Plaintiff argues the

Full Commission's findings in support of this conclusion are "deficient" because they do not explain how Plaintiff failed to conduct a reasonable job search. Plaintiff further asserts that the Full Commission improperly relied on *Ward v. Floors Perfect*, 151 N.C. App 752, 567 S.E.2d 465 (2002) (unpublished) because the facts of *Ward* are "extremely different from this case."

Having determined Plaintiff's findings of fact 41, 85, 86, 87, 88, and 89 are supported by competent evidence and sufficiently explain how Plaintiff failed to conduct a reasonable job search, we next examine Plaintiff's remaining argument: that the Full Commission's reliance on *Ward* was improper.

"An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority[,]" and citation to an unpublished opinion is "disfavored . . . ." N.C. R. App. P. 30(e)(3). Nevertheless, an exception exists and citation to an unpublished opinion is generally permissible "where the persuasive value of a case is manifestly superior to any published opinion." *State ex rel. Moore County Bd. of Educ. v. Pelletier*, 168 N.C. App. 218, 222, 606 S.E.2d 907, 909 (2005). This principle applies at both the appellate and trial court level. *See Zurosky v. Shaffer*, 236 N.C. App. 219, 233–34, 763 S.E.2d 755, 764 (2014) (explaining that the trial court may rely on persuasive authority in the same way as an appellate court "if the case is properly submitted and discussed and there is no published case on point"). Consistent with *Zurosky*, we conclude the Industrial Commission may rely on persuasive authority in the same manner as a trial or appellate court. *See id.* at 233–

34, 763 S.E.2d at 764.

Here, the Full Commission concluded that from 3 April 2020 until 20 April 2022, "Plaintiff was capable of work [and] did not put forth reasonable effort to obtain employment [when] . . . it would not have been futile for him to seek employment." In conclusion of law 7, the Full Commission cited to *Ward* stating: "In *Ward v. Floors Perfect*, the Court of Appeals of North Carolina held that an injured worker who had not conducted a reasonable job search prior to attending community college full-time voluntarily removed himself from the job market and was not entitled to temporary total disability compensation." Analogizing to *Ward*, the Full Commission stated, "[s]imilarly, in the case at bar, Plaintiff enrolled in a full-time community college curriculum in the fall semester of 2020, not having conducted a reasonable job search before beginning classes."

Plaintiff asserts that, unlike the claimant in *Ward*, he did not voluntarily stop working at a company he owned, but was instead laid off by Defendant-Employer and was under more limiting work restrictions. Plaintiff also highlights the fact that he presented testimony from a vocational professional indicating Plaintiff needed re-training. He further notes that from 14 September 2021 until 15 May 2022, he unsuccessfully sought employment. These factual distinctions, however, do not undermine the "persuasive value" of *Ward*. *See Moore Cnty. Bd. of Educ.*, 168 N.C. App. at 222, 606 S.E.2d at 909. Indeed, *Ward* specifically analyzes how a claimant's decision to voluntarily exit the workforce in pursuit of an education impacts the

reasonableness of his job search. Further, Plaintiff has not directed our attention to a published opinion with stronger persuasive value than *Ward*.

In *Ward*, this Court held the Commission's determination that the claimant "voluntarily removed himself from the job market and chose to enter community college" was supported by the evidence. *Ward*, at *14. This Court noted that "none of [claimant's] doctors opined that [he] could not work, and [he] presented no medical evidence that he was unable to work." *Ward*, at *14.

Similarly here, Plaintiff did not re-enter the job market, but instead chose to attend community college at a time when he was not unable, due to his injury, to work. Although Plaintiff was advised by Dr. Castor in July 2020 to "avoid heavy lifting," he was not under any formal work restrictions for the relevant time period. Because *Ward* is factually similar and there appears to be no other case equally as persuasive, we conclude it was not improper for the Full Commission to rely on *Ward* in conclusion of law 7. *See Moore County Bd. of Educ.*, 168 N.C. App. at 222, 606 S.E.2d at 909.

## VI. Conclusion

The Full Commission's conclusion that Plaintiff was not entitled to wage-loss compensation from 2 April 2020 until 20 April 2022 is supported by the findings which are supported by competent evidence. Accordingly, we affirm the Opinion and Award.

AFFIRMED.

Chief Judge DILLON and Judge COLLINS concur.